UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Case No.:
CAMIERA KNIGHT

                              Plaintiff,                    COMPLAINT

    -against-

JETBLUE AIRWAYS CORPORATION and JAMIN      PLAINTIFF DEMANDS
KNOBEL, *Individually*,                                      A TRIAL BY JURY

                              Defendants.
-------------------------------------------------------------------X

       Plaintiff, CAMIERA KNIGHT, (hereinafter "Plaintiff"), by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## Nature of the Case

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("1981"), the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq*. ("NYCHRL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against and retaliated against** and being subjected to a **hostile work environment** by her employer solely due to her race (Black).

## Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 42 U.S.C. §§ 2000e-5(f)(3) and 1981, and 28 U.S.C. §§1331 and 1343 as it arises under the laws of the United States and is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

1

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## Procedural Prerequisites

5. Plaintiff received a Notice of Right to Sue from the EEOC, dated August 27, 2020, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

6. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

7. Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

## Parties

8. At all times material, Plaintiff is and was a resident of Bronx County, State of New York.

9. At all times material, Defendant JETBLUE AIRWAYS CORPORATION, ("JETBLUE") was and is a foreign business corporation organized under the laws of the State of Delaware, that provides aerial transportation services to passengers across the United States, the Caribbean, and Latin America.

10. At all times material, Defendant JETBLUE conducts and operates business pursuant to, and by virtue of, the laws of the State of New York, with a corporate office located at 27-01 Queens Plaza North, Long Island City, New York 11101.

11. At all times material, Defendant JETBLUE was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

12. At all times material, Defendant JETBLUE had 15 or more employees for each working day in each of 20 or more calendar weeks in 2018.

13. At all times material, Defendant JETBLUE had 15 or more employees for each working day in each of 20 or more calendar weeks in 2019.

14. At all times material, Defendant JETBLUE had 15 or more employees for each working day in each of 20 or more calendar weeks in 2020.

15. At all times material, Defendant JETBLUE was Plaintiff's employer under TITLE VII.

16. At all times material, Defendant JETBLUE was Plaintiff's employer under the NYSHRL.

17. At all times material, Defendant JETBLUE was Plaintiff's employer under the NYCHRL.

18. At all times material, Defendant JAMIN KNOBEL (hereinafter "KNOBEL") is and was an employee of Defendant JETBLUE holding the position of Base Manager.

19. At all times material, Defendant KNOBEL was Plaintiff's Base Manger and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant KNOBEL is being sued herein in his official and individual capacities.

20. Defendant JETBLUE and Defendant KNOBEL are sometimes collectively referred to herein at times as "Defendants."

21. At all times relevant hereto, Plaintiff was an employee of Defendants.

## Material Facts

22. On or about November 2, 2016, Defendants employed Plaintiff as a Flight Attendant in their headquarters located in Queens, New York.

23. As a Flight Attendant, Plaintiff's job duties included, but were not limited to, providing customer service to Defendant JETBLUE's in-flight passengers.

24. Throughout Plaintiff's employment with Defendants, Plaintiff was an exemplary employee and was well qualified for her position as a Flight Attendant.

25. Indeed, during her employment, Plaintiff continued to receive her yearly annual raises while employed with Defendants.

26. At the time Defendant JETBLUE terminated Plaintiff's employment, Plaintiff was earning an hourly rate of $29.76 plus benefits or approximately $62,000 per year.

27. In or around February 2019 and throughout her employment with Defendants thereafter, Plaintiff experienced a hostile work environment, which included discriminatory treatment based on race.

28. On or about February 6, 2019, Plaintiff was alerted for the first time that she was being issued a corrective action for an alleged incident that purportedly occurred a month earlier, on or about January 11, 2019.

29. Plaintiff was the only crewmember on her shift to be issued a corrective action. Plaintiff was reported for making a boarding announcement acknowledging a customer's birthday. Plaintiff was shocked as she had made this type of announcement before with no issues and was commended for making such an announcement previously. In fact, Plaintiff received Defendant JETBLUE's "Lift Award" and was recognized as a "Blue Hero of the Week" due to her attentiveness and customer care.

30. Moreover, Plaintiff witnessed other non-Black Flight Attendants make the same type of announcement in the past and, upon information and belief, those employees were not issued corrective actions.

31. Plaintiff felt targeted and believed this sudden adverse treatment was discriminatory, on the basis of her race, and provided a rebuttal to the corrective action. Moreover, the corrective action was the beginning of the hostile work environment Plaintiff experienced as a result of reporting discrimination.

32. On or about March 22, 2019, Plaintiff discussed the February 6th corrective action with Base Manager, Defendant KNOBEL. Plaintiff prides herself on being a reliable and reputable employee and maintaining an accurate employment record was of great importance to her. Plaintiff hoped to fairly address the disciplinary action with a discussion with Defendant KNOBEL.

33. However, Defendant KNOBEL refused to explain why Plaintiff was the only employee, out of many others who engaged in similar activity, who was issued a corrective action. He provided little information and refused to investigate Plaintiff's complaint that she was being unfairly singled out.

34. On or about March 31, 2019, Plaintiff reported the disparate treatment she was subjected to, regarding the corrective action, to Defendants' human resources (hereinafter "HR") representatives, Sharon Laska and Gerald Issac, thereby engaging in protected activity.

35. Defendants' HR representative, Kevin Hsu, responded to Plaintiff's concerns and engaged in a dialogue with Plaintiff.

36. Then, on or about April 11, 2019, Defendant KNOBEL communicated to Plaintiff that the February 6 corrective action would be reversed.

37. In or around May 2019, Plaintiff was assigned a new supervisor, Delilah Badillo.

38. On or about June 16, 2019, Plaintiff was reprimanded for being out of uniform due to her hair style. There was another crewmember (Caucasian) standing right beside Plaintiff who displayed the same supposed dress code violation for which Plaintiff was being reprimanded, but was not given the same reprimand.

39. On or about June 18, 2019, during boarding and before take-off, an incident occurred where a combative passenger called Plaintiff, in sum and substance, a "Black bitch." Plaintiff was the only Black flight attendant working on that flight. Plaintiff did not initiate the altercation and tried to deescalate any confrontation.

40. Plaintiff reported to her supervisor that the passenger's threatening and demeaning manner caused Plaintiff to have concerns for her safety. There was an extensive dialogue between Plaintiff and Defendant JETBLUE's Supervisors. Defendant JETBLUE suggested that Plaintiff leave the plane to which Plaintiff refused because it would have been documented that Plaintiff refused to fly. Eventually, the passenger was convinced to leave the flight with a complimentary free of charge round trip flight.

41. As a result of the incident on June 18, 2019, Plaintiff was again reprimanded and a complaint was added to her personnel record as if Defendants were purposefully and intentionally building a record of bad performance.

42. On or about June 19, 2019, Plaintiff discussed with her supervisor, Ms. Badillo, the lack of consistency on uniform policy and the failure to properly ensure Plaintiff's safety after a passenger aggressively hurled a racial expletive at Plaintiff. Moreover, ever since Plaintiff reported the arbitrary corrective action issued on February 6, 2019, she felt targeted and subjected to further retaliation for complaining of racial discrimination.

43. On or about July 14, 2019, Plaintiff suffered a severe migraine caused by fumes emitted from a plane on which she was working. Consequently, Plaintiff applied for FMLA for short-term leave.

44. On or about July 24, 2019, Plaintiff was informed the passenger who called Plaintiff a "Black bitch" lodged a complaint against Plaintiff. Plaintiff submitted a statement in response stating that she was clearly discriminated against, disrespected, and belittled when the passenger was spewing derogatory racial slurs against her. Furthermore, Plaintiff included that she believed Defendant JETBLUE failed to properly address and ensure her safety due to retaliation for reporting past racial discrimination.

45. On or about August 4, 2019, Plaintiff received an electronic copy of her personnel file. Plaintiff was disappointed to find the February 6th corrective action was not removed as she was previously led to believe. She brought it to Defendants' attention again. However, she received no response.

46. On or about August 9, 2019, another incident occurred in which a passenger called one of the crewmembers working alongside Plaintiff, a "*nigger*" along with other racially and sexually offensive terms. The incident was reported and law enforcement was called to remove the passenger from the flight.

47. On or about August 12, 2019, as result of the incident on August 9, 2019, Defendants proceeded with a full investigation.

48. To Plaintiff's bewilderment, Plaintiff was placed on a suspension without pay pending the outcome of the investigation of the incident on August 9, 2019.

49. Upon information and belief, Plaintiff was the only employee placed on suspension.

50. Plaintiff questioned the suspension and was told it was due to her having two passenger removals in the last 30 days. When Plaintiff explained she was not directly involved in the August 9, 2019 incident, Defendant KNOBEL refused to listen and instead dismissed her.

51. This inconsistent disparate treatment and adverse action taken against Plaintiff further illustrates Defendants' discrimination and retaliation towards Plaintiff.

52. Plaintiff spent the next several days speaking with Defendant JETBLUE's crew relations department and HR to discuss Defendant JETBLUE's and KNOBEL's unreasonable and unjustifiable decision to suspend Plaintiff.

53. Notably, on or about August 13, 2019, Plaintiff reported that she was targeted and suspended. Furthermore, each time Plaintiff reported discriminatory incidents, Defendant KNOBEL became increasingly hostile towards Plaintiff and retaliated against Plaintiff for reporting racial discrimination.

54. On or about August 26, 2019, Plaintiff's suspension was lifted and she returned to work.

55. Though Plaintiff was repaid an amount of base salary that she would have received had she not been suspended, she was denied additional compensation to which she would have been entitled had she flown as a Crew Member during the suspension period.

56. On or about October 26, 2019, while on duty, Plaintiff again experienced severe side effects due to the plane's fume emission. On this particular day, the severity of the fume emissions caused two crewmembers, including Plaintiff, to be hospitalized. Following this incident, Plaintiff applied for and submitted paperwork for FMLA leave.

57. On or about November 20, 2019, Plaintiff received an email that her application for FMLA was under review and processing.

58. On or about November 21, 2019, Plaintiff experienced the same severe side effects she had experienced on October 26, 2019. Once the aircraft landed, Plaintiff reported this incident to her supervisor.

59. On or about November 22, 2019, Defendant KNOBEL called Plaintiff to schedule a mandatory meeting. When Plaintiff inquired whether other crewmembers would be present, Defendant KNOBEL shouted, in sum and substance, "You called MedAire, so you triggered this…" referring to the incident on November 21, 2019, that required a mandatory meeting. After a short exchange with Plaintiff, Defendant KNOBEL abruptly ended the call.

60. On or about November 25, 2019, Plaintiff met with Michael Roldan, Base Manager, Andrea Isear, Inflight Supervisor, and Scott Sicafor, Crew Relation, in person for a meeting. Defendant KNOBEL was not present. Plaintiff was asked about the incidents surrounding the side effects caused by the fumes emitted from the plane. Plaintiff explained in detail how the fumes caused her migraines and that it was so severe that Plaintiff was hospitalized on one occasion.

61. When Plaintiff was asked how management could have handled her situation better, Plaintiff reported Defendant KNOBEL's hostility and retaliatory adverse actions, i.e. her August 12, 2019, unreasonable suspension. Furthermore, she described the most recent incident that occurred on November 22, 2019, where Defendant KNOBEL shouted at her and abruptly ended a conversation in a hostile manner.

62. On or about December 20, 2019, Plaintiff filed a charge of discrimination and retaliation against Defendant JETBLUE with the EEOC.

63. On or about December 23, 2019, Plaintiff was issued another a corrective action, purportedly because she wore a facemask on November 22, 2019, during inflight.

64. On or about December 23, 2019, Plaintiff requested a copy of the corrective action. Plaintiff believed she was not provided the same due process as other crewmembers and was being targeted again for complaining of discrimination and retaliation.

65. On or about January 21, 2020, Plaintiff was summoned to a meeting with Defendants. During this meeting Defendants attempted to terminate Plaintiff's employment for cause. Plaintiff was first accused of misusing travel privileges on January 1, 2020, in violation of Defendants' policies. Plaintiff denied the accusation and then Defendants attempted to accuse Plaintiff of stealing and/or misusing company time by travelling outside of the country during a "Home Reserve" shift (essentially a shift during which a crewmember is compensated for being "on-call" in the event they are needed on short notice to report for duty).

66. At the end of the meeting, Plaintiff was asked to provide a rebuttal statement and was told that she would be given an update as to her employment status on her next shift, which was scheduled for January 24, 2020.

67. Though Plaintiff did travel to Jamaica close in time to her scheduled Home Reserve shift, she was not actually "out of position" during the shift at issue and violated no Defendant JETBLUE policy.

68. However, Plaintiff initially provided a rebuttal stating that she had been out of the country during her Home Reserve shift, in error.

69. Plaintiff did not imagine that she would be terminated though since being "out of position" during a Home Reserve shift was not automatically a terminable offense.

70. On or about January 24, 2020, Plaintiff reported to her shift per her schedule. Before she prepared to depart on her flight, Plaintiff was summoned and was ordered to gather her belongings in front of her colleagues. On the same day, Plaintiff was suspended without pay, pending employment review.

71. Plaintiff's employment was summarily terminated by Defendants.

72. Other non-Black employees who were out of position during a Home Reserve shift were not summarily terminated.

73. Defendant JETBLUE has a progressive discipline policy which does not include immediate termination due to a violation of the Home Reserve policy.

74. Further, Plaintiff followed up with Defendant JETBLUE to advise that she was not in fact "out of position" with respect to her Home Reserve shift and did not violate any policy. She had initially made an error when she reported that she was "out of position."

75. Given the close temporal proximity between Plaintiff's complaints of discrimination and her termination (approximately 1 month), Defendant JETBLUE clearly accelerated discipline against Plaintiff to termination in retaliation for the numerous complaints of discrimination Plaintiff had made.

76. Part of the basis for Defendant JETBLUE's termination of Plaintiff were the two aforementioned passenger removal incidents which lead to Plaintiff's temporary suspension in 2019.

77. On or about January 24, 2020, Plaintiff submitted a second EEOC charge against Defendant JETBLUE.

78. Plaintiff felt humiliated and emotionally distraught by the chain of events leading to her suspension and then having her dismissal witnessed publicly by her colleagues.

79. As a result of the hostile work environment and harassment created and perpetuated by the Defendants, Plaintiff suffered and continues to suffer from humiliation and embarrassment.

80. Upon information and belief, Plaintiff was a hard-working employee, who did not misuse Defendant JETBLUE's travel privileges, nor did she steal and/or misuse time.

81. But for Defendant KNOBEL's position at Defendant JETBLUE, the Individual Defendant would not have been able to subject Plaintiff to discriminatory treatment, retaliation, and the hostile work environment alleged above.

82. Plaintiff was repulsed, offended, disturbed, humiliated, victimized, and disgusted by this blatantly unlawful racial harassment, discrimination and hostile work environment.

83. Defendants created a hostile work environment, which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

84. The above are just some examples of how Defendants regularly and continually harassed Plaintiff while employing Plaintiff.

85. Defendants treated Plaintiff this way solely due to Plaintiff's race (Black) and her objections to the discriminatory and retaliatory actions taken against Plaintiff.

86. Defendants' actions and conduct were intentionally and intended to harm Plaintiff.

87. Defendants unlawfully racially harassed, humiliated, embarrassed, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

88. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendants.

89. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

90. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

91. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

92. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### First Cause of Action for Discrimination
### Under Title VII of the Civil Rights Act of 1964
### (Not Against Individual Defendant)

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer… discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race*, color, religion, sex, or national origin.

95. Defendant JETBLUE engaged in unlawful employment practices prohibited under 42 U.S.C. § 2000e, *et seq*., by discriminating against Plaintiff solely based on her race.

96. Defendant JETBLUE violated the section cited as set forth.

97. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### Second Cause of Action for Retaliation
### Under Title VII of the Civil Rights Act of 1964
### (Not Against Individual Defendant)

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate

against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

100. Defendant JETBLUE engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

101. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### Third Cause of Action for Discrimination
### Under 42 U.S.C. § 1981 (As Amended)
### (Against All Defendants)

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

104. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Black).

105. Plaintiff is entitled to the maximum amount allowed under this ordinance.

### Fourth Cause of Action for Retaliation
### Under 42 U.S.C. § 1981 (As Amended)
### (Against All Defendants)

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. By the acts and practices described above, Defendant retaliated against Plaintiff for her opposition to unlawful discrimination under 42 U.S.C. § 1981.

108. Defendants acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

109. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

### Fifth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against all Defendants)

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

111. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

112. Defendants violated the section cited herein as set forth.

### Sixth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Not Against Corporate Defendant)

113. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

115. Defendant KNOBEL engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

### Seventh Cause of Action for Retaliation
### Under the New York State Executive Law
### (Against All Defendants)

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117. New York State Executive Law § 296(1)(e) provides that, It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

118. Defendants violated the section cited herein as set forth.

119. Plaintiff is entitled to the maximum amount allowed under this statute.

### Eighth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Against all Defendants)

120. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

121. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to

      refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

122. Defendants violated the section cited herein as set forth.

### Ninth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Not Against Corporate Defendant)

123. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

124. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

125. Defendant KNOBEL engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

126. Defendant KNOBEL violated this statute as set forth.

### Tenth Cause of Action for Retaliation
### Under the New York City Administrative Code
### (Against All Defendants)

127. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

128. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

129. Defendants violated the section cited herein as set forth.

130. Plaintiff is entitled to the maximum amount allowed under this statute.

17

## Jury Demand

131. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, New York State Human Rights Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff and created a hostile work environment based on Plaintiff's race (Black), retaliated against Plaintiff due to her complaining of discrimination, and unlawfully terminated Plaintiff;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for loss of income, the loss of a salary, bonus, benefits, and other compensation, which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       November 20, 2020

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

By: _____
       Steven Fingerhut
       *Attorneys for Plaintiff*
       45 Broadway, Suite 430
       New York, New York 10006
       (212) 248-7431
       sfingerhut@tpglaws.com